23796

The STATE, Respondent v. John Babe RAY, Jr., Appellant.

(427 S.E. (2d) 171)

Supreme Court

*David I. Bruck* and *South Carolina Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Sol. Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Sept. 21, 1992.

Decided Feb. 1, 1993.

FINNEY, Justice:

Appellant Johnny Ray, Jr., appeals from his guilty plea and sentences on indictments for assault and battery with intent to kill, armed robbery, first-degree burglary, grand larceny, kidnapping and murder arising from three different incidents which occurred during late August and early September, 1990. The cases were consolidated, and the appellant was sentenced to consecutive prison terms on the charges of assault and battery with intent to kill, armed robbery and grand larceny; and a consecutive life sentence for first-degree burglary. Upon a finding of the statutory aggravating circumstance of kidnapping, the trial judge imposed a sentence of death on the charge of murder. We affirm the validity of appellant's guilty plea and all sentences with the exception of the death sentence. Appellant's death sentence is vacated, and this case is remanded for resentencing on the charge of murder.

Josylin Ballenger had been aiding and providing transportation for several fugitives, including the appellant, who were in hiding to avoid charges arising from an attack and theft. They suspected Ballenger of informing the police of their activities. On September 5, 1990, following an argument, the appellant shot Ballenger. After the fugitives agreed to take her to the hospital emergency room, Ballenger told appellant she would say she shot herself.

Ballenger climbed into the bed of her pick-up truck under her own power and was placed in a sleeping bag for the trip to the hospital. The appellant sat in the back of the truck with Ballenger leaning against him. On the way, the truck was stopped to allow appellant to place a telephone call. After the phone call, appellant returned to the vehicle and spoke with the driver. They continued on their way for a distance and then diverted the vehicle to an isolated area known as Beagle

Club Road. Immediately after the vehicle turned onto the dirt road, Ballenger and the appellant began struggling as the appellant attempted unsuccessfully to strangle her with a piece of rope while she gasped for air. After the truck stopped and Ballenger was still alive, the appellant stabbed her at least four times with a sheath knife, hit her, and stomped her in the throat with his boot.

Appellant and his companions then removed Ballenger's body from the truck, dumped it in a nearby well and threw debris down the well to cover the body. Before leaving the scene, appellant attempted to shoot Cody Moore, a member of the group, but the shotgun jammed. The following day, Moore absconded and subsequently reported Ballenger's murder to the police. On September 7, 1990, appellant was arrested and charged with murder.

On February 25, 1991, the circuit court granted a defense motion to consolidate the several charges pending against appellant for purposes of a guilty plea. On March 15, 1991, the state served notice of its intention to seek the death penalty on the indictment for murder.

On April 29, 1991, the appellant entered a plea of guilty to all the pending charges with the stipulation that the plea to kidnapping and murder were entered under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. (2d) 162 (1970), pursuant to appellant's claim that he was under the influence of alcohol and LSD[1] at the time the offenses were committed. The plea proceedings transpired during the morning of April 29. After the midday recess, the court conducted the sentencing proceeding on the afternoon of April 29 with the assent of counsel for the defense and the state. The appellant did not testify, and the record does not reflect a waiver of his right to testify.

■ Initially, appellant asserts the trial judge erred in accepting his guilty plea to capital murder under *North Carolina v. Alford, supra,* in the absence of an admission of guilt of the crimes charged. Appellant urges this Court to adopt a holding that a death sentence should be prohibited when it rests upon an *Alford* plea which does not include an explicit admission of guilt. We decline to adopt such a view.

----

[1] Lysergic acid diethylamide.

The United States Supreme Court held in *Alford* that an accused may consent voluntarily, knowingly, and understandingly to the imposition of a prison sentence although unwilling to admit culpability, or even if the guilty plea contains a protestation of innocence, when the accused intelligently concludes that his interests require a guilty plea and the evidence strongly supports his guilt of the offense charged.

In determining the validity of a guilty plea, we are persuaded that the paramount concern is whether it was entered freely and voluntarily.[2] We discern no prejudice to an accused in a capital punishment case who seeks to plead guilty without an explicit admission of guilt if such a plea would be in his best interests, and if freely and voluntarily made. In the present case, appellant does not claim innocence or allege that his guilty plea was involuntary, made under duress, or that the trial judge committed a constitutional violation. Therefore, we conclude that an *Alford* plea may form a valid basis for imposition of the death penalty.

Appellant next alleges the trial judge erred in proceeding directly from the plea to sentencing without waiting at least twenty-four hours as required by S.C. Code Ann. § 16-3-20(B) (Supp. 1991). We agree.

Section 16-3-20(B) provides, in pertinent part:

> Upon conviction or adjudication of guilt of a defendant of murder, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable after the lapse of twenty-four hours unless waived by the defendant. If trial by jury has been waived by the defendant and the State, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before the court. . . .

---

[2] This Court has previously reversed guilty pleas entered under *Alford* in instances where it determined that the pleas may have been rendered coercive or involuntary due to misinformation on the part of the trial judge or erroneous advice of counsel. *See Brown v. State,* — S.C. —, 412 S.E. (2d) 399 (1991); and *Ray v. State,* 303 S.C. 374, 401 S.E. (2d) 151 (1991).

In construing a statute, words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute. *State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 377 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992). We construe Section 16-3-20(B) to mandate a distinct, bifurcated proceeding in murder cases upon conviction or adjudication of guilt of a defendant and, unless waived by the defendant, require the lapse of a minimum of twenty-four hours after the guilt phase before beginning the sentencing phase—regardless of whether conviction was by a jury or adjudication under a guilty plea before a judge without a jury.

Citing our holding in *State v. Arthur,* 296 S.C. 495, 374 S.E. (2d) 291 (1988), we reiterated in *State v. Orr,* 304 S.C. 185, 403 S.E. (2d) 623 (1991), the necessity that the waiver of a constitutional or statutory right be clearly shown on the record, which should reflect that the defendant made such waiver knowingly and intelligently.

At the beginning of appellant's sentencing proceeding, the court inquired whether the defense was ready, and defense counsel said "[y]es [s]ir." The record does not indicate any waiver by the defendant or other colloquy between the court and counsel or the court and the defendant with regard to waiver of the waiting period. We do not deem defense counsel's assent to immediately proceeding with sentencing sufficient to constitute a waiver of the statutory waiting period. This Court vacates the sentence of death imposed on the charge of murder on the grounds that the statutory waiting period was not observed, and the defendant did not affirmatively waive the waiting period.

Additionally, appellant contends the trial judge erred in failing to secure an on-the-record waiver of appellant's right to testify at the sentencing phase proceeding. We agree.

During his guilty plea, the appellant waived his right to testify and declined to offer a statement following his attorneys' arguments in mitigation. Appellant neither testified nor waived his constitutionally-protected right to testify in the sentencing phase. In fact, the record is devoid of any showing that appellant was aware he could testify at sentencing.

A defendant's knowing and voluntary waiver of a statutory or constitutional right must be established by a complete record; and may be accomplished by colloquy between the court and the defendant, between the court and defendant's counsel, or both. *See State v. Orr supra.* In *State v. Norris,* 285 S.C. 86, 328 S.E. (2d) 339 (1985), this Court specifically held that a capital defendant has the right to testify *and* make a closing statement in the sentencing phase. The denial of the right to testify at either phase of a capital trial, absent a showing on the record of a knowing and voluntary waiver, constitutes reversible error. *State v. Orr, supra.*

The appellant also takes exception to the statutory aggravating circumstance of kidnapping under S.C. Code Ann. § 16-3-20(C)(a)(1)(b) (Supp. 1991) as being unconstitutionally overbroad or overinclusive. Relying upon *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed. (2d) 372 (1988); and *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed. (2d) 398 (1980), appellant argues that Section 16-3-20(C)(a)(1)(b) does not channel or limit the sentencer's discretion in imposing the death penalty; thus thwarting the notice requirement of the Eighth Amendment of the United States Constitution.

Overbreath attacks on § 16-3-910 have previously been rejected by this Court as well as the Fourth Circuit Court of Appeals. *See Adams v. Aiken,* 965 F. (2d) 1306 (4th Cir. 1992); and *State v. Copeland,* 278 S.C. 272, 300 S.E. (2d) 63 (1982). The Eighth and Fourteenth Amendments require that the statute channel the sentencer's discretion. However, trial judges are presumed to know the law and apply a narrowing definition. *See Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed. (2d) 511 (1990).

Moreover, we note the distinction between our statute and the challenged statutes in Oklahoma's *Maynard* and Georgia's *Godfrey.* Those statutes sought to establish aggravating circumstances upon a showing that certain offenses were committed in a manner described as "especially heinous, atrocious, or cruel," *Maynard, supra;* or "outrageously or wantonly vile, horrible or inhuman," *Godfrey, supra.* The United States Supreme Court determined that such abstract terms may allow a sentencer to base its decision of whether or not to impose capital punishment upon a subjective judgment lack-

ing the inherent restraint necessary to avoid arbitrary and capricious infliction of the death sentence.

Conversely, the South Carolina aggravating circumstance of kidnapping is defined by S.C. Code Ann. § 16-3-910 (Supp. 1991) as the unlawful seizure, confinement, inveigling, decoying, kidnapping, abducting or carrying away of any other person by any means whatsoever without authority of law. We hold that the objective language of Section 16-3-910 comports with an accused's Eighth and Fourteenth Amendments rights in that it sufficiently limits sentencing discretion and puts offenders on notice of the elements which constitute the aggravating circumstance of kidnapping. *See Sochor v. Florida,* — U.S. —, 112 S.Ct. 2114, 119 L.Ed. (2d) 326 (1992).

Next, appellant maintains that even if the kidnapping statute is not overbroad, the evidence fails to support a determination that the murder was committed during the commission of a kidnapping. We disagree.

The record unambiguously shows an independent, felonious kidnapping, not incidental to the murder, and that the kidnapping was ongoing and current when the murder occurred. *Cf. State v. Owens,* 291 S.C. 116, 352 S.E. (2d) 474 (1987); *State v. Plath,* 281 S.C. 1, 313 S.E. (2d) 619 (1984). There is conflicting evidence as to the exact point in time appellant decided to kill the victim. It is abundantly clear that she left the site of the initial shooting to go to the hospital, that she was conscious and resisted the abduction, and that she was murdered in the process of being kidnapped and deprived of her freedom. We conclude that the trial judge's finding that the murder was committed during the commission of a kidnapping is supported by evidence in the record.

In view of our disposition of this case, we deem it unnecessary to address appellant's remaining exceptions.

Accordingly, this Court affirms the validity of appellant's guilty plea and all sentences except the sentence of death. We, vacate appellate's sentence of death and remand for resentencing on the charge of murder on the grounds that 1) the sentencing phase proceeding was conducted less than twenty-four hours after conclusion of the guilty plea, without a knowing and voluntary waiver of the waiting period by the appel-

lant as mandated by Section 16-3-20(B); and 2) the failure of the record to reflect the appellant's knowing and voluntary waiver of his right to testify during his sentencing proceeding.

Affirmed in part; vacated in part; and remanded.

HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.